

FILED
AUG -8 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                          Criminal No. 3:08CR339

BENJAMIN C. THOMPKINS, JR.

**MEMORANDUM OPINION**

Benjamin C. Thompkins, Jr., proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion"). (ECF No. 77.) Thompkins asserts entitlement to relief upon the following grounds:[1]

| | |
|---|---|
| Claim I | "Defense counsel was ineffective for failing to seek a Franks[2] hearing on the search warrant." (§ 2255 Mot. 13.) |
| Claim II | "Defense counsel . . . fail[ed] to adequately attack an improperly applied 'good faith exception' . . . ." (Id. at 14.) |
| Claim III | "Defense counsel was ineffective for failing to properly litigate and follow up on the motion to suppress where evidence is discovered that tends to show that an agent misled the Magistrate in obtaining the issuance of a search warrant." (Id.) |
| Claim IV | "Defense counsel was ineffective for failing to seek a Franks hearing on the insufficient affidavit, application, & certificate of probable cause which led to the purported issuance of a search warrant." (Id. at 15.) |

---

[1] The Court has altered the capitalization and the emphasis in the quotations to Thompkins's claims.

[2] Franks v. Delaware, 438 U.S. 154 (1978).

The Government has responded. (ECF No. 91.) Thompkins moved for an extension of time to file a reply and thereafter filed a reply. (ECF No. 94.)

On September 2, 2011, the Court received from Thompkins a "MOTION TO SUPPLEMENT TITLE 28 U.S.C. § 2255 BRIEF . . ." ("First Motion to Amend," ECF No. 83), wherein he seeks to add the following claim:

> Claim V     Counsel failed to challenge the amount of drugs attributed to Thompkins. (First Mot. Amend, Addendum 1-4, ECF No. 83-1.)

On January 18, 2012, the Court received from Thompkins his "REQUEST TO SUPPLEMENT HIS §2255 MOTION PURSUANT TO RULE 15(a) OF FED. R. CIV. PROC." ("Second Motion to Amend," ECF No. 85.) In his Second Motion to Amend, Thompkins contends that, in light of <u>United States v. Simmons</u>, 649 F.3d. 237 (4th Cir. 2011), the statutory enhancement in his case is incorrect. The Court will treat this as Claim VI.

On September 4, 2012, the Court received from Thompkins a "REQUEST FOR LEAVE TO SUPPLMENT 2255 MOTION PURSUANT TO RULE 15 OF FED.R.CIV. PROC." ("Third Motion to Amend," ECF No. 97.) In the Third Motion to Amend, Thompkins seeks to add the following claim:

> Claim VII     Counsel failed to convey to Thompkins the Government's "willingness to give [Thompkins] a plea offer of 10 years until after [Thompkins] had been convicted of the pending federal charges." (Third Mot. Amend 2.)

2

Thompkins's Motions to Amend (ECF Nos. 83, 85, 97) will be granted. For the reasons set forth below, his claims will be dismissed.

### I. PROCEDURAL HISTORY

#### A. Initial Charges

On June 23, 2008, Mark Bertsch, a special agent with the United States Drug Enforcement Agency, obtained a search warrant to search Thompkins's residence, upon a showing of probable cause that Thompkins's had and would continue to manufacture and distribute marijuana. (See Search Warrant and Aff. 1-7, ECF No. 13-1.) During the search of Thompkins's residence, Agent Bertsch discovered, among other things, thirty-five marijuana plants, five grams or more of crack cocaine, an ounce of cocaine hydrochloride, and a firearm. (Criminal Compl. 1, ECF No. 1.) On July 1, 2008, Thompkins was charged with possession with intent to distribute five grams or more of cocaine base. (Id.)

On July 22, 2008, a grand jury indicted Thompkins on the following crimes: possession with intent to distribute five grams or more of cocaine base (Count One); possession of a firearm in furtherance of a drug trafficking crime (Count Two); possession of firearms/ammunition by a convicted felon (Count Three); and possession with intent to distribute marijuana (Count Four). (Indictment 1-3, ECF No. 8.)

3

On September 16, 2008, a grand jury charged Thompkins with the following crimes: possession with intent to distribute fifty grams or more of cocaine base (Count One); possession of a firearm in furtherance of a drug trafficking crime (Count Two); possession of firearms/ammunition by a convicted felon (Count Three); and possession with intent to distribute marijuana (Count Four). (Superseding Indictment 1-3, ECF No. 12.)

### B. The Motion To Suppress

On September 11, 2008, Thompkins moved to suppress the evidence seized from his residence pursuant to a search warrant. (ECF Nos. 10-11.) On October 14, 2008, the Court denied the motion to suppress. (ECF No. 17.) The Court concluded the affidavit established probable cause and that, even if it did not, the good faith exception to the warrant requirement applied. (Oct. 14, 2008 Tr. 37, 40.) The United States Court of Appeals for the Fourth Circuit aptly summarized the circumstances surrounding the search of Thompkins's residence as follows:

> DEA Special Agent Bertsch, who had extensive experience investigating drug trafficking, applied for the warrant. In his affidavit, he recited that a confidential informant, who had provided reliable information in previous investigations, had reported that "BJ" had made six calls to a hydroponics store, requesting prices for products typically used to cultivate marijuana. The calls came from 13011 Five Forks Road, Benjamin Thompkins' residence. Thompkins had previously been served a summons at that address . . . . BJ had also visited the hydroponics store and purchased products commonly used to cultivate marijuana.

4

The affidavit further stated that Thompkins' residence had used an average of 3008 kilowatt hours of power during each billing cycle between December 2007 and May 2008. During the same time period, a significantly larger neighboring residence had used an average of 2092 kilowatt hours per cycle, and a comparably sized residence had used an average of 1190 kilowatt hours per cycle. Agent Bertsch stated that, in his experience, this unusually large consumption of electricity was consistent with the interior cultivation of marijuana. Additionally, Thompkins' girlfriend had inquired about how to reset a digital timer of the sort that is often used in the cultivation of marijuana. Finally, employment records showed that Thompkins had no reported income since 2003, and Agent Bertsch stated that drug dealers typically do not report illegal income.

United States v. Thompkins, 377 F. App'x 292, 294 (4th Cir. 2010). The Fourth Circuit also agreed that, "[e]ven if the affidavit did not establish probable cause, rendering the warrant deficient, the good faith exception to the warrant requirement would apply . . . ." Id.

C. **Conference Call On The Day Before Trial**

In his affidavit in support of the search warrant, Agent Bertsch swore that the he had subpoenaed Dominion Virginia Power to obtain records of electrical usage for Thompkins's residence and that of the neighboring homes. (Gov't's Resp. Mot. New Trial Ex. 1 ¶¶ 9, 12, ECF No. 69.) On November 18, 2008, during a conference call, Thompkins, through counsel, indicated that Dominion Virginia Power had never received a subpoena with respect to Thompkins's residence. (Nov. 18, 2008 Tr. 3.) Defense counsel suggested that the information concerning power

records in the affidavit "was potentially illegally gotten, but at the very least there was a misrepresentation in the affidavit as to the fact that the information was, in fact, subpoenaed." (Nov. 18, 2008 Tr. 3.) Counsel asserted that he had spoken "with someone in the legal department [of Dominion Virginia Power] who says they looked through the information on the computer for the address in question, and they don't see that any subpoena was received by Dominion. And that is normally the procedure." (Nov. 18, 2008 Tr. 9.)

Before the conference call, defense counsel had issued a subpoena duces tecum to review the relevant records from Dominion Virginia Power to determine whether they had a record of the subpoena for the electrical usage records for Thompkins's residence. (Nov. 18, 2008 Tr. 3.) Defense counsel had not received a response to the subpoena duces tecum as of the time of the telephone conference.[3] (Nov. 18, 2008 Tr. 3-5.) The Court noted that counsel knew about the pertinent records for a long time and had moved only recently to subpoena them. (Nov.

---

[3] On October 21, 2008, defense counsel had filed the motion for the subpoena duces tecum. By Order entered on October 27, 2008, the Court had granted the motion. The subpoena duces tecum directed Dominion Virginia Power to produce in the Clerk's Office for the Court by 5:00 p.m. on November 14, 2008, any records "regarding any subpoenas, subpoena duces tecums [sic], affidavits or the like regarding account numbers 4509954212 in the name of Benjamin Thompkins, 3438367868 in the name of Frank Booker, Jr. and 3947345272 in the name of Alice Givens, from January 01, 2007 to present." (ECF No. 20, at 1 (italics omitted).)

6

18, 2008 Tr. 10.) The Court denied counsel's motion to continue the trial until Dominion Virginia Power responded to counsel's subpoena duces tecum. (Nov. 18, 2008 Tr. 13.)

### D. The Trial

After a two-day trial on November 19 and 20, 2008, a jury convicted Thompkins of the four counts charged in the Superseding Indictment.[4]

Immediately following the jury's verdict, the Court conducted a hearing with respect to the administrative subpoena. Mark Bertsch, the agent who had prepared the subpoena and received records in response to the subpoena, testified as to how he had served the subpoena and received the records in response to the subpoena. After the conclusion of Agent Bertsch's testimony, the Court concluded that the power usage records were not fabricated and Thompkins had "no evidence whatsover" that the records "were obtained by artifice." (Nov. 20, 2008 Tr. 347.)

### D. Dominion Virginia Power's Response To Counsel's Subpoena Duces Tecum

On November 25, 2008, the Court received Dominion Virginia Power's response to defense counsel's subpoena duces tecum. (ECF No. 38.) The response indicated that Dominion Virginia Power did not have a record of a subpoena for power records for

---

[4] The Court sentenced Thompkins to 300 months of imprisonment. (J. 2, ECF No. 45.)

7

Thompkins's residence or the neighboring homes. (Id. at 2.)

Thompkins moved for a new trial based upon this response. By Memorandum Opinion and Order entered on February 10, 2012, the Court denied the motion as untimely because his Motion for a New Trial was "not predicated on newly discovered evidence pertaining to his innocence." United States v. Thompkins, No. 3:08CR339, 2012 WL 442216, at *4 (E.D. Va. Feb. 10, 2012).

### E. Sentencing

On November 4, 2008, the Government filed its notice of intent to seek an enhanced sentence based on Thompkins's prior felony drug offense for possession of cocaine. (See ECF No. 21, 21-1.) Thereafter, the Court sentenced Thompkins to 300 months of imprisonment. (J. 2, ECF No. 45.)

## II. INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires

8

a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

A. **Franks Hearing**

The purpose of a Franks hearing is to determine whether, but for the inclusion of intentional or reckless misstatements by the affiant, an affidavit would not support a finding of probable cause. United States v. Clenney, 631 F.3d 658, 663 (4th Cir. 2011). A defendant challenging the validity of a warrant is entitled to a hearing if he makes a preliminary showing that: "(1) the warrant affidavit contain[s] a 'deliberate falsehood' or statement made with 'reckless disregard for the truth' and (2) without the allegedly false statement, the warrant affidavit is not sufficient to support a finding of probable cause." United States v. Fisher, 711 F.3d 460, 468 (4th Cir. 2013) (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

9

Here, in Claim I, Thompkins faults counsel for failing to pursue a <u>Franks</u> hearing based on the confusion in the record as to whether Agent Bertsch had actually subpoenaed Dominion Virginia Power to obtain records of electrical usage for Thompkins's residence. Specifically, Thompkins assert that,

> [t]here was evidence that [Agent Bertsch] did not obtain a subpoena for the power records as [he] claimed, and this inconsistency would have . . . required the exclusion of [the power records] in the determination of probable cause. Without the power records, there is not probable cause to support the warrant.

(§ 2255 Mot. 13.)

During these § 2255 proceedings, however, the Government has provided evidence that puts to rest the suggestion that Agent Bertsch misrepresented that he obtained Thompkins's power records without a subpoena. (Gov't's Supp'l Resp. Ex. 1, ECF No. 105-1.) Specifically, the Government has provided the affidavit of Diane Barden, a Physical Security Coordinator in the Security Services Department of Dominion Resources Services, Inc. (<u>Id.</u> ¶ 1.) Ms. Barden swears;

> 2. I received the attached Subpoena via facsimile on June 2, 2008 from Special Agent Mark Bertsch of the Drug Enforcement Administration.
> 3. Although the Subpoena was directed to Joyln Hooper, I, in fact, received and processed it, as Ms. Hooper was no longer an employee at that time.
> 4. As part of my regular duties with Dominion at that time, I reviewed billing and service histories for residential accounts and provided records in response to Subpoenas issued by governmental agencies.
> 5. I provided the attached records via e-mail to Special Agent Mark Bertsch of the Drug Enforcement Administration on June 5, 2008.

10

(Id. ¶¶ 2-5.) Barden attached to her affidavit the subpoena issue by Agent Bertsch and the power records she supplied to him. (Gov't's Supp'l Resp. Exs. 2-3.)

Thus, had counsel pursued a Franks hearing, he would not have succeeded in invalidating the search of Thompkins's residence. Accordingly, Claim I will be dismissed because Thompkins fails to demonstrate prejudice.

B. **The Motion To Suppress**

In Claim II, Thompkins insists that counsel failed to adequately challenge the conclusion that the good faith exception protected the search of his residence. Specifically, Thompkins contends that "[b]ecause the affidavit and warrant in this case were so deficient, there could not have been good faith on the part of the officers to allow the introduction of the illegally obtained evidence." (§ 2255 Mot. 14.) This claim lacks merit. As observed by the United States Court of Appeals for the Fourth Circuit, "the district court properly denied the suppression motion based on its determination that the affidavit contained enough information to establish probable cause that evidence of marijuana cultivation would be found at Thompkins' residence." United States v. Thompkins, 377 F. App'x 292, 293-94 (4th Cir. 2010). The Fourth Circuit also explained that, "[e]ven if the affidavit did not establish probable cause, rendering the warrant deficient, the good faith exception to the

warrant requirement would apply in this case, as the district court found." Id. at 294. Thompkins fails to direct the Court to any evidence to alter the above conclusions. Accordingly, Claim II will be dismissed because Thompkins fails to demonstrate deficiency or prejudice.

In a related vein, in Claim III, Thompkins faults counsel for failing to challenge at the suppression hearing allegedly misleading remarks made by Agent Bertsch in the affidavit to obtain a search warrant of Thompkins's residence. First, Thompkins suggests that Agent Bertsch misled the Magistrate Judge "into believing that due to Petitioner's recent purchasing and utilization of hydroponics, [Petitioner] is using a very high amount of power relative to other homes." (§ 2255 Mot. 26.) Thompkins notes that his power usage amounts exceeded that of surrounding homes even before Agent Bertsch obtained information regarding Thompkins's purchase of hydroponic equipment. (Id.) Agent Bertsch, however, did not mislead the Magistrate Judge. Thompkins's purchase of hydroponic equipment in 2008 is consistent with an effort on Thompkins's part to replace previously purchased hydroponic equipment or expand a preexisting marijuana growing business. Such an inference is consistent with statements in the affidavit that Thompkins had no reported income since 2003. (See Gov't's Resp. to Mot. Suppress Ex. 1 ("Search Warrant Aff."), ¶ 13, ECF No. 13-1.)

Second, Thompkins complains that "Bertsch states in his affidavit concerning a subpoena served on Petitioner . . . was for a 'cocaine charge' when in actuality, the subpoena had absolutely nothing to do with cocaine." (§ 2255 Mot. 27.) Thompkins misrepresents the content of the affidavit. The affidavit states that Amelia County Police informed Bertsch that Thompkins once was arrested for a cocaine charge. (Search Warrant Aff. ¶ 10.) In a separate, unrelated paragraph, Bertsch stated that, "[o]n June 5, 2008, a Deputy of the Amelia County Sheriff's Office served a show cause summons on Benjamin THOMPKINS, Jr. on the front steps of [13011 Five Forks Road]." (Id. ¶ 11.) Because Thompkins fails to demonstrate that Agent Bertsch made any misleading or inaccurate remarks, counsel reasonably eschewed pursuing the issues urged here by Thompkins. Claim III will be dismissed because Thompkins fails to demonstrate deficiency or prejudice.

In Claim IV, Thompkins continues to argue that the affidavit in support of the search warrant for his home failed to demonstrate probable cause of criminal activity. Such arguments lack merit for the reasons previously stated and will be dismissed.

In Claim IV, Thompkins also faults counsel for failing to challenge the administrative subpoenas issued by Agent Bertsch to obtain Thompkins's and Thompkins's neighbors' power records

and Thompkins's subscriber information with TDS Telecom. (§ 2255 Mot. 31-35.) Thompkins insists that counsel should have, inter alia, raised technical challenges to the manner in which the subpoenas were endorsed and served.

Counsel reasonably declined to pursue the issues raised here by Thompkins. "[T]he administrative subpoenas were not directed at [Thompkins], but rather at third party businesses. As a consequence, he did not have standing to dispute their issuance on Fourth Amendment[5] grounds, unless he could demonstrate that he had a legitimate expectation of privacy attaching to the records obtained." United States v. Phipps, 999 F.2d 1053, 1077 (6th Cir. 1993) (citing United States v. Salvucci, 448 U.S. 83 (1980); Katz v. United States, 389 U.S. 347 (1967)). Courts have found that when an individual uses power in his home and voluntarily conveys that information to a third-party business, he enjoys "no reasonable expectation of privacy in his power records." United States v. Hamilton, 434 F. Supp. 2d 974, 980 (D. Or. 2006); see United States v. McIntyre, 646 F.3d 1107, 1111-12 (8th Cir. 2011) (quoting Hamilton, 434 F. Supp. 2d at 980). Indeed, when Thompkins's father-in-law, Frank Booker, Jr., brought a civil suit challenging Agent Bertsch's use of the administrative subpoena

---

[5] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

14

to obtain Booker's power records, this Court concluded that "Booker had no legitimate expectation of privacy and, therefore, no Fourth Amendment interest, in the business records of either TDS or Dominion, on which his Fourth Amendment claim is based." Booker v. Dominion Va. Power, No. 3:09cv759, 2010 WL 1848474, at *9 (E.D. Va. May 7, 2010). Accordingly, Claim IV will be dismissed because Thompkins fails to demonstrate deficiency or prejudice.

**C. Sentencing**

In Claim V, Thompkins faults counsel for failing to challenge the amount of cocaine base attributed to Thompkins based on U.S. Sentencing Guidelines Manual ("U.S.S.G.") Amendment 484. Amendment 484, which became effective on November 1, 1993, provides that:

> [A] [m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance.

U.S.S.G. app. C, amend. 484.

The jury found Thompkins guilty of possession with intent to distribute fifty grams or more of cocaine base. (Superseding Indictment 1, ECF No. 12; Verdict Form 1, ECF No. 35.) The Court found Thompkins responsible for 62.18 grams of cocaine base for sentencing purposes. (Presentence Report ¶ 19; Feb. 6,

15

2009 Tr. 3.) Thompkins argues that Amendment 484 required the Court to reduce the amount of cocaine base attributable to him by the amount of sodium bicarbonate included in the 62.18 grams of cocaine base. (First Mot. Amend 3.) He is wrong. Because "sodium bicarbonate and other cutting agents in the crack cocaine were properly included in calculating the volume of crack cocaine [attributable to Thompkins], counsel's decision not to contest the volume of the crack cocaine mixture used during sentencing was not ineffective assistance of counsel." Everhart v. United States, Nos. 5:11-cv-119-RLV, 5:03-cr-34-RLV-1, 2012 WL 3598268, at *7 (W.D.N.C. Aug. 20, 2012) (rejecting identical argument). Accordingly, Claim V will be dismissed because Thompkins fails to demonstrate deficiency or prejudice.

   D.  **Alleged Deficiency With Respect To Plea Negotiations**

   In Claim VII, Thompkins contends that counsel failed to convey to Thompkins the Government's "willingness to give [Thompkins] a plea offer of 10 years until after he had been convicted of the pending federal charges." (Third Mot. Amend 2.) Thompkins notes that, "[a]t no point was petitioner told before trial that the government had made an offer of ten years . . . had petitioner been aware of this [offer], he would have accepted the plea, instead of taking the chance of winning at trial." (Id.)

16

This claim lack factual merit. The Government swears that, "no formal or informal plea offer was made by the United States to counsel for the Petitioner." (ECF No. 109-1, at 1.)[6] Thompkins's counsel, James T. Maloney, confirms this account. (Maloney Aff. ¶¶ 2-3, 5, ECF No. 110.) Maloney further swears that he asked Thompkins whether Thompkins wanted to pursue a plea agreement in the hopes of potentially obtaining a less severe sentence. (Id. ¶¶ 4-6; Maloney Aff. Oct. 20, 2008 Letter to Thompkins 1-2, ECF No. 110-1.) Maloney avers that, "Thompkins remained steadfast in his desire to contest the matter at trial." (Maloney Aff. ¶ 7.)

Because the Government never offered to allow Thompkins to plead guilty and only receive ten years of imprisonment, Thompkins fails to demonstrate deficiency or prejudice. Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012) (observing a defendant cannot demonstrate prejudice with respect to a plea offer "[i]f

---

[6] If Thompkins had pled guilty to the original Indictment and received a three level reduction for the timely acceptance of responsibility, with respect to the drug charges, Thompkins would have had an Offense Level of 27 and Criminal History Category II resulting in a guideline range of 78-97 months. (See Presentence Report, Worksheets A-D.) In addition, Thompkins faced a 60-month consecutive sentence for the charge of possession of firearm in furtherance of a drug trafficking offense. Thus, absent an agreement from the Government, Thompkins could not have secured a sentence of less than ten years of imprisonment.
  Once the Government filed the Superseding Indictment, Thompkins faced a statutory minimum sentence of fifteen years of imprisonment. After the Government filed a notice of its intent to seek an enhanced sentence, Thompkins faced a statutory minimum sentence of twenty-five years.

no plea offer is made"). Accordingly, Claim VII will be dismissed.

### III. ALLEGED IMPROPER SENTENCE EHANCEMENT

Prior to Thompkins's trial, pursuant to 21 U.S.C. § 851(a)(1), the Government filed notice of its intent to seek an enhanced sentence based Thompkins's March 23, 2000 conviction of possession of cocaine in the Circuit Court of the County of Amelia. (See ECF No. 21) As a result, at his federal sentencing proceeding, Thompkins faced a statutory minimum sentence of twenty years to life on Count One. (Presentence Report 1.)

In Claim VI, Thompkins contends that, in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), his conviction for possession of cocaine fails to qualify for a predicate felony for purposes of enhancing his sentence. As pertinent here, in Simmons, the Fourth Circuit concluded that, "if a particular defendant 'could not have received a sentence in excess of twelve months' for his [state] conviction,' the government cannot use it as a predicate [felony] for federal sentencing enhancement purposes." United States v. Copeland, 707 F.3d 522, 526 (4th Cir. 2013) (first alteration in original) (quoting Simmons, 649 F.3d at 239-40, 249) (some internal quotation marks omitted). Here, Thompkins's conviction for possession of cocaine qualified as a Class 5 felony under

18

Virginia law, see Va. Code 18.2-250(A) (Michie 1998), for which he could have been sentenced to "a term of imprisonment of not less than one year nor more than ten years." Va. Code 18.2-10(e) (Michie 1998). Thus, Thompkins fails to demonstrate any error in the use of his Virginia conviction for possession of cocaine for purposes of enhancing his federal sentence. Accordingly, Claim VI will be dismissed.

## IV. CONCLUSION

Thompkins's claims will be dismissed. Thompkins's Motion for the Appointment of Counsel (ECF No. 103) will be denied. The § 2255 Motion (ECF No. 77) will be denied. The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)).

Thompkins has not satisfied this standard. The Court will deny a certificate of appealability.

The Clerk is directed to send a copy of this Memorandum Opinion to Thompkins and counsel for the Government.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: August 7, 2014
Richmond, Virginia